810 P.2d 720

Mike **BACA** and Josephine Baca, Father and Mother of Allen M. Baca, personally and as heirs and personal representatives of the estate of Allen M. Baca, deceased; Mary Y. Pecos, Mother of Anthony M. Pecos, personally and as heir and personal representative of the estate of Anthony M. Pecos, deceased, and also as grandmother and general guardian of Brennan Toya, minor child of Anthony M. Pecos; Ethel B. Waquie, widow of Andrew V. Waquie, personally and as heir and personal representative of the estate of Andrew V. Waquie, deceased, and as mother and general guardian of Vicenti Waquie, minor child of Andrew V. Waquie; Veronica Waquie, Mother of Benjamin P. Waquie, personally and as heir and personal representative of the estate of Benjamin P. Waquie, deceased; Hilario Armijo; Timothy W. Armijo; Vincent Chavez; David Chinana; Victor Chinana; Ivan Gachupin; Michael Gachupin; Dennis Magdalena; Frank Magdalena, Jr.; Roberta P. Toledo; Nathaniel Tosa; and Allen Toya, Jr., Plaintiffs–Appellants,

v.

**STATE** of Idaho, The Idaho Army Reserve National Guard, Steven B. McCord and Thomas F. Herron, Defendants–Respondents.

No. 18256.

Supreme Court of Idaho, Boise, December 1990 Term.

March 6, 1991.

Rehearing Denied May 28, 1991.

Siebe, Landeck, Westberg & Judge, Moscow, for appellants. Ronald J. Landeck argued, Moscow.

Quane, Smith, Howard & Hull, Boise, for respondents. Thomas Lopez argued, Boise.

McDEVITT, Justice.

In the summer of 1986, the forests of Idaho were tender, dried by the elements, awaiting only some igniter to explode. Lightning storms provided that spark and forest fires erupted in numerous locations across the state of Idaho.

One of the worst of those fires was situated on Anderson Creek, located in the Boise National Forest, twenty miles northeast of Garden Valley, Idaho, which consumed in excess of 23,600 acres.

The resources of existing agencies were not adequate to cope with the situation. To address this situation, the Governor of the State of Idaho, John Evans, issued the following proclamation:

NOW, THEREFORE, I, JOHN V. EVANS, GOVERNOR OF THE STATE OF IDAHO, by virtue of the authority vested in me by Sections 46–601 and 46–1008 of the Idaho Code do hereby find and therefore proclaim and declare:

1. That a state of extreme emergency exists in the State of Idaho.

2. That the state of extreme emergency herein described shall exist for a period of thirty days unless sooner terminated or unless extended at the completion of that period.

This proclamation will be subject to the following provisions:

1. All agencies of the State Government, including all separate boards and commissions, are required to take action under the rules and regulations issued hereunder by authority of the Governor to arrest the conditions perpetuating the state of extreme emergency.

2. The Adjutant General, Idaho, will activate the Cooperative Fire Plan between the U.S. Forest Service, the State Department of Lands and the National Guard and may order into the service of the State units and personnel of the National Guard of the State Militia as required under the rules and regulations

issued hereunder to assist State and other agencies in arresting the conditions perpetuating the state of extreme emergency.

Pursuant to the proclamation issued by the Governor, the Adjutant General of the State of Idaho, activated the cooperative fire plan that existed between the United States Forest Service, the State Department of Lands, and the Idaho National Guard. As provided in that plan, the National Guard supplied personnel and equipment to support fire fighters, including transportation between the Anderson Creek fire base camp and the fire line. The action of the National Guard commenced on August 12, 1986.

On August 24, 1986, two Idaho Army Reserve National Guard members, McCord and Herron, were driving fire fighters back to camp. The driver, Guardsman McCord, had averaged 15 hour shifts for nine days prior to the accident, ranging from 11.5 hours to 20.5 hours per shift. Eight of these days were over 12 hours, which is the maximum shift allowed by National Guard guidelines. Co-driver Herron had averaged 14.6 hour shifts for the nine day period prior to the date of the accident, ranging from 12.5 hours to 20.5 hours per shift. At approximately 5:10 a.m., the truck driven by McCord and Herron ran off a mountain road and rolled down an 80 foot embankment. The truck contained fire fighters from Sandoval County, New Mexico, who were in Idaho to fight the Anderson Creek fire. Of the fourteen fire fighters in the truck at the time of the accident, four were killed and ten were injured. Appellants were temporary employees of the United States Department of Agriculture (Forest Service) who departed New Mexico on August 12, 1986, and worked from August 13th until the date of the accident, August 24th.

## DOES I.C. § 46–1017 PROVIDE IMMUNITY TO THE IDAHO ARMY RESERVE NATIONAL GUARD?

■ The issue presented is whether I.C. § 46–1017 of the State Disaster Preparedness Act provides the Idaho Army Reserve National Guard with immunity because they were engaged in disaster relief activities at the time of the accident. The district court found that the statute did provide immunity. We affirm that decision.

The relevant part of I.C. § 46–1017 provides:

Neither the state nor any political subdivision thereof nor other agencies, nor, except in cases of wilful misconduct, the agents, employees or representatives of any of them engaged in any civil defense or disaster relief activities, acting under a declaration by proper authority nor, except in cases of wilful misconduct or gross negligence, any person, firm, corporation or entity under contract with them to provide equipment or work on a cost basis to be used in disaster relief, while complying with or attempting to comply with this act, shall be liable for the death of or any injury to persons or damage to property as a result of such activity....

Appellants first argue that the National Guard does not fall within the definition of "other agencies" and that because there is no specific reference to the National Guard in the statute, they are liable for the deaths and injuries suffered as a result of the accident. We disagree.

Clearly, those state agencies involved in fighting the Anderson Creek fire were providing disaster relief at the request of the Governor. Idaho Code § 46–1002(3) of the same Act defines "disaster" as the:

... [O]ccurrence or imminent threat of widespread or severe damage, injury or loss of life or property resulting from any natural or man made cause, including but not limited to fire, flood, earthquake, windstorm, wave action, volcanic activity, explosion, riot, or hostile military or paramilitary action.

Fire fighting is precisely the type of activity that I.C. § 46–1017 was intended to cover. As such, the statute provides immunity to those state agencies involved in disaster relief efforts. This includes the Idaho National Guard. The fact that the statute does not refer to the National Guard specif-

ically is of no consequence; the statute does not name any specific agencies or organizations but lists only broad categories such as the "state," "any political subdivision thereof," "other agencies" and their "agents, employees or representatives."

Accordingly, we hold that the district court was correct in ruling that the National Guard is provided immunity under I.C. § 46–1017.

## DOES THE IDAHO TORT CLAIMS ACT APPLY TO THE NATIONAL GUARD?

■ Appellants next argue that under the Idaho Tort Claims Act the National Guard should be held liable for acts performed during emergency relief activities. The basis for this is a highly convoluted argument intertwining legislative history, legislative intent, and statutory interpretation of amendments to the Tort Claims Act passed in 1974, 1976, and 1987. We find no basis to infer that the Idaho Tort Claims Act applies to the National Guard while engaged in disaster relief activities. The Tort Claims Act does not serve to frustrate the purpose or eliminate the effect of the State Disaster Preparedness Act by any stretch of the imagination.

## DOES I.C. § 46–402 OPERATE TO PROVIDE IMMUNITY?

■ Respondents argue that the district court erred when it found that the National Guard was not also provided immunity under I.C. § 46–402. We disagree. Idaho Code § 46–402 is a grant of immunity limited to members of the National Guard while ordered into active service of the state. The Governor's Proclamation authorized the Adjutant General to implement the Cooperative Fire Plan and order the National Guard into service at his discretion. The Adjutant General did implement the plan, but there is no evidence in the record that he ever had to order members of the National Guard into service. In a document from the Adjutant General's office, there is a reference to "a call up for volunteer assistance for vehicles and drivers to report as soon as necessary preparation

would allow," and the guardsmen are referred to as "volunteers." Because of the absence of any evidence that the guardsmen were ordered into active service as I.C. § 46–402 requires, we must assume that they were not; therefore, I.C. § 46–402 is not applicable.

In conclusion, we hold that I.C. § 46–1017 does provide the National Guard with immunity while engaging in disaster relief activities pursuant to a declared state of emergency. The district court's grant of pretrial summary judgment based on the immunity provisions of I.C. § 46–1017 is affirmed.

Costs to Respondent.

BAKES, C.J., and JOHNSON and BOYLE, JJ., concur.

BISTLINE, Justice, dissenting:

Idaho Code § 46–1017 of the State Disaster Preparedness Act does not provide the Idaho Army Reserve National Guard with immunity from tort liability. The Appellants have constructed a thorough, well-researched argument interpreting the statute and the relevant legislative history that convincingly disposes of the issue in their favor:

"III. SECTION 46–1017 OF THE DISASTER PREPAREDNESS ACT DOES NOT IMMUNIZE THE IDAHO NATIONAL GUARD FROM LIABILITY.

"The Guard attempts to avoid the consequences of McCord and Herron's negligence by asserting that IDAHO CODE Section 46–1017, a section of the Idaho Disaster Preparedness Act, affords immunity by providing that:

*Neither the state nor any* political subdivision thereof nor *other agencies, nor,* ... the agents, *employees* of representatives *of any of them* engaged in civil defense or disaster relief activities, *acting under a declaration by proper authority ... shall be liable for the death of or any injury to persons* or damage to property *as a result of such activity.* (Emphasis supplied).

"The Guard, however, is not intended to be the beneficiary of any sovereign immunity granted by this section. Legislative history and rules of statutory construction establish that the Idaho National Guard is distinguished from the state and its agencies.

"The reason for this is that the Guard is an unusual hybrid of the state and federal governments, being both regulated and paid by the federal government, yet subject to command of the Governor, as discussed below.

"A. *Analysis of Title 46 of the IDAHO CODE.*

"1. *Generally.*

"Title 46 of the IDAHO CODE discusses organization and operation of the militia of the state, which is divided into three (3) classes, being the National Guard, the organized militia and the unorganized militia. IDAHO CODE Section 46–103. The National Guard consists of 1) enlisted personnel organized, equipped and armed as provided in the National Defense Act, Title 32, United States Code, and 2) commissioned officers appointed by the Governor in conformity with the provisions of the National Defense Act. *Id.* The organized militia includes any portion of the unorganized militia called into service by the Governor and not federally recognized. The unorganized militia includes all of the militia of the State of Idaho not included in the Guard or the organized militia. *Id.* IDAHO CODE Section 46–107 requires that the Governor conform the Guard in organization, armament and discipline and otherwise as prescribed by the National Defense Act and other laws of the United States.

"A specific immunity statute, applicable to members of the National Guard ordered into active service of the state, is found in IDAHO CODE Section 46–402. McCord and Herron asserted that immunity in Respondents' Second Motion for Summary Judgment filed in this case, which Motion was partially denied for the reason that these members were not ordered into active service of the State thereby not giving rise to operation of the immunity provision.

That decision was not appealed and is not at issue before this Court.

"2. *Disaster Preparedness Act.*

"What is at issue is the interpretation of IDAHO CODE Section 46–1017 cited above, a part of the Disaster Preparedness Act. The Disaster Preparedness Act establishes the State's policies, purposes and procedures to plan and prepare for and deal with disasters and emergencies. It establishes a Bureau of Disaster Services ('Bureau'), answerable to the Governor, IDAHO CODE Section 46–1004, which coordinates the activities of 'state agencies' involved in disaster relief. IDAHO CODE Section 46–1006. The Bureau, despite being empowered to coordinate disaster services among state agencies, is not delegated any authority by the legislature to control activities of the National Guard. A close reading of the Bureau's powers and responsibilities in Sections 46–1004 to 1006 demonstrates that the Bureau is given no express duties affecting the Guard.

"Section 46–1008 of the Disaster Preparedness Act defines the Governor's role in disaster emergencies. His constitutional powers as commander of the militia, see Art. IV, Section 4, Idaho Constitution, are expanded to include command of the militia in the exercise of emergency duties under the Disaster Preparedness Act, as follows:

(4) During the continuance of any state of disaster emergency the *governor is commander-in-chief of the militia and may assume command of all other forces* available for emergency duty. To the greatest extent practicable, the *governor shall delegate or assign command authority by prior arrangement* embodied in appropriate executive orders or regulations, but nothing herein restricts his authority to do so by orders issued at the time of the disaster emergency.

IDAHO CODE § 46–1008(4) (emphasis added).

"That the militia is and always has been considered an entity separate and distinct from other state departments, agencies, and political subdivisions is clear from the

next subparagraph of Section 46–1008 which read in its original version in relevant part:

> (5) In addition to any other powers conferred upon the *governor* by law, he *may:*
>
> (b) *utilize all resources of the state and the political subdivisions* as he deems necessary to cope with the disaster emergency;
>
> (c) *transfer the direction, personnel, or functions of state departments and agencies* or units thereof for the purpose of performing or facilitating emergency services;

IDAHO CODE § 46–1008(5)(b) and (c) (1975) (emphasis added). [Footnote in Appellant's Brief omitted.]

"If the militia were a state agency, the language of subparagraphs (4) and (5) of Section 46–1008 would be unnecessarily repetitive. State departments and agencies, as part of the executive branch of government, are already under the Governor's 'command' and the power granted him to 'delegate or assign command authority' in subparagraph (4) would be superfluous given his power under subparagraph (5) to 'transfer the direction ... of state departments and agencies....'

"Furthermore, the separate references to the militia in subparagraph (4), and to political subdivisions and agencies in subparagraph (5), are entirely consistent with the harmonious interpretation of Section 46–1017 suggested by Appellants. Section 46–1017 refers specifically to 'political subdivision[s]' and other 'agencies' but omits any reference to the militia. There is no rational explanation why the legislature would distinguish between the militia and other agencies in Section 46–1008 and then lump these entities together for the purposes of Section 46–1017. The omission of the militia from the protections afforded by Section 46–1017 is intentional.

"As is the case in Section 46–601 et seq., discussed *infra*, the legislature has provided the governor authority over the National Guard in one subsection and power over state agencies in a related subsection. If the Idaho National Guard were simply a

state agency, then Section 46–1008(4) would be unnecessary because the governor's power over the Guard would be established by Section 46–1008(5)(c) alone. In order to provide Section 46–1008(4) meaning, it must be concluded that the Idaho National Guard is not included in references to 'state departments and agencies or units thereof' for purposes of the Disaster Preparedness Act. It is a maxim of statutory interpretation that statutory provisions should be interpreted in a manner which does not nullify them, and it is not to be presumed that the legislature performed an idle act of enacting a superfluous statute. *Walker v. Nationwide Financial Corporation of Idaho,* 102 Idaho 266, 629 P.2d 662 (1981), *rehrg. den., DeRousse v. Higginson,* 95 Idaho 173, 505 P.2d 321 (1973). The legislature's separate treatment of the Idaho National Guard and state agencies in Section 46–1008, contained in the same Act as Section 46–1017, is dispositive of this issue on appeal. The National Guard is not intended to be defined as the state or a state agency under Section 46–1017.

"3. *Sections 46–601 et seq.*

"The distinction made in Section 46–1008, between the militia and other agencies, is also made in Chapter 6 of Title 46, Martial Law and Active Duty. Section 46–601 provides in relevant part:

> Authority of governor.—(a) The governor shall have the power in the event of a state of extreme emergency to order into the active service of the state, the national guard, or any part thereof, and the organized militia, or any part thereof, or both as he may deem proper.
>
> (b) During a period of a state of extreme emergency, the governor shall have complete authority over all agencies of the state government, including all separate boards and commissions, and the right to exercise within the area or regions wherein the state of extreme emergency exists all police power vested in the state by the constitution and the laws of the state of Idaho.

IDAHO CODE § 46–601(a) and (b).

"Again, if the National Guard or militia were an agency of the state, subparagraph

(b) would make subparagraph (a) entirely superfluous. '[C]omplete authority over all *agencies* of the state government' would necessarily include the National Guard, and there would be no need to grant to the governor additional authority in subparagraph (a) 'to order into the active service of the state, the national guard.' Therefore, it must be that the legislature enacted Section 46–601(a) for a reason, the reason being that the Guard is not a state agency under Section 46–601(b). The National Guard is simply not an agency. *Walker* and *DeRousse, supra,* compel such a conclusion.

"4.   *The Idaho Administrative Procedures Act Excludes the Idaho National Guard from its Definition of Agency.*

IDAHO CODE Section 46–1006(5), a portion of the Disaster Preparedness Act, incorporates the Administrative Procedures Act:

The State Disaster Plan or any part thereof may be incorporated in regulations of the Bureau [of Disaster Services] promulgated *subject to Chapter 52, Title 67, IDAHO CODE* [The Administrative Procedures Act]. (Emphasis added).

The Administrative Procedures Act, IDAHO CODE Sections 67–5201 et seq., defines 'agency' as:

[E]ach state board, commission, department or officer authorized by law to make rules or to determine contested cases, *except* those in the legislative or judicial branch, *the state militia* and the state board of corrections.

IDAHO CODE § 67–5201(1) (emphasis added).

"Thus, the legislature, in implementing the Disaster Preparedness Act, has incorporated the definition of state 'agency,' found in the Administrative Procedures Act, into the internal workings of the State's disaster relief activities.

"Further, the Bureau, charged with coordinating these relief activities by definition has no regulatory authority over the militia, including the Guard.

"To apply any other definition of 'agency' to other provisions of the Disaster Preparedness Act, including specifically Section 46–1017, does violence to the well-established rule that 'statutes which are *in pari materia* are to be construed together to the end that legislative intent will be effected.' *Union Pacific Railroad Co. v. Board of Tax Appeals,* 103 Idaho 808, 811, 654 P.2d 901 (1982). As the *Union Pacific* court observed,

[t]he rule that statutes *in pari materia* are to be construed together means that each legislative act is to be interpreted with other acts relating to the same matter or subject. Statutes are in *pari materia* when they relate to the same subject. Such statutes are taken together and construed as one system, and the object is to carry into effect the intention. It is to be inferred that a code of statutes relating to one subject was governed by one spirit and policy and was intended to be consistent and harmonious in its several parts and provisions. For the purpose of learning the intention, *all statutes relating to the same subject are to be compared, and so far as still in force brought into harmony by interpretation.*

*Ibid* (emphasis added).

"In this instance, the definition of 'agency' in Section 67–5201 unequivocally excepts the state militia. More importantly, the Administrative Procedure Act is specifically cited in and utilized for regulatory purposes in the Disaster Preparedness Act, the statute upon which Respondents rely for their alleged immunity. The only way to construe these statutes, which relate to the same subject, to reach a consistent and harmonious interpretation, is to apply the definition of 'agency' in Section 67–5201 to the Disaster Preparedness Act. This reading of Section 46–1017 is also in harmony with Section 46–402, where express immunity is provided National Guard members when ordered into active service. Construed as 'one system,' these statutes must be read to exclude the Idaho National Guard from the definition of 'state' and 'other agencies' of the state as used in

Section 46–1017 of the Disaster Preparedness Act.

## "B. *The Governor's Anderson Creek Fire Proclamation.*

"The Governor's Proclamation also recognized the distinction between the National Guard and state agencies. The Proclamation states in part:

1. All *agencies of the state government,* including all separate boards and commission, are required to take action under the rules and regulations issued hereunder by authority of the Governor to arrest the conditions perpetuating the state of extreme emergency.

2. The Adjutant General, Idaho ... may order into service of the state *units and personnel of the National Guard of the State Militia as required under the rules and regulations issued hereunder to assist State and other agencies* in arresting the conditions perpetuating the state of extreme emergency.

(Emphasis added)

"Not only does the Governor's Proclamation, like the language of the Disaster Preparedness Act, clearly distinguish between the treatment of 'agencies' of the state and the National Guard in implementing emergency activities. In addition, paragraph 2 of the Governor's Proclamation draws a distinction between the 'National Guard' and the 'State and other agencies.' The executive branch of Idaho government thus views the Guard as an entity separate and distinct from the terms 'state' and 'other agencies.'

## "C. *The Idaho Tort Claims Act provides for Claims Against the National Guard When Not Engaged in Military Training or Duty.*

"That McCord and Herron and the National Guard are not immune from liability for their actions here is also evident from analysis of the Idaho Tort Claims Act, IDAHO CODE Sections 6–901 *et seq.* ('Tort Claims Act'), and particularly recent amendments to IDAHO CODE Section 6–904 enacted by the legislature in 1987, that made absolute the exemption from the coverage of the Tort Claims Act any activities of the National Guard when engaged in military training or duty. That exemption mirrors the immunity granted in Section 46–402 and establishes a legislative intent and policy that the Guard's immunity only applies to those actions arising from military training or duty. This is not a case in which military training or duty is an issue. There would be no reason for the legislature to expressly reference the Idaho National Guard in Section 6–904 when discussing exceptions to governmental liability, if the Guard had no liability. The point is that the Guard and its members are liable for their negligence while performing non-military functions, those not excepted under Sections 6–904 or immunized under Section 46–402.

"Moreover, the legislative history to the 1987 amendment expressly demonstrates that the legislature and the Guard believed and intended that the State would continue to be fully liable for actions of the Guard when 'called out by the Governor during a state declared emergency.'. *See* Minutes of House Transportation and Defense Committee, March 12, 1987, Addendum, Exhibit D, page discussion of SB 1161; *see also* Addendum, Exhibit C, 'Statement of Purpose' for SB 1161, and briefing sheet on SB 1161 (both documents forming part of the legislative record on this bill and both of which acknowledge the continuing liability of the state for the Guard's actions during a civil emergency). These unequivocal statements by the legislature and the Guard as to the meaning of pending legislation demonstrate that the legislature intends that Section 46–1017 afford no protection for the National Guard and its employees.

## "D. *The Idaho National Guard Has Not Been Included as an Agency or Instrumentality of the Executive Department of the State under Article IV, § 20 of the Constitution of Idaho and I.C. § 67–2042.*

Article 4, Section 20 of the Idaho constitution provides in pertinent part:

All executive and administrative officers, agencies, and instrumentalities of the executive department of the state and their respective functions, powers, and duties, except for the office of governor, lieutenant governor, secretary of state, state auditor, state treasurer, attorney general and superintendent of public instruction, shall be allocated by law among and within not more than twenty (20) departments by no later than January 1, 1975.

"The only exception to this requirement is in regard to temporary agencies, which may not exist for longer than two years. Article 4, Section 20. The legislature fulfilled this constitutional mandate through passage of IDAHO CODE Section 67–2402, which provides that, in regard to Article 4, Section 20 of the Idaho Constitution, 'all executive and administrative offices, agencies and instrumentalities of the executive department of state, except for those assigned to the elected constitutional officers,' are allocated among the included list of departments. The list at Section 67–2402 includes nineteen separate departments, none of which contains the Idaho National Guard. Section 67–2402(1) also provides that the public school districts of Idaho shall be considered 'civil departments of state government' for the purpose of the purchase of state endowment land at appraised prices. There is no similar mention or provision for the Idaho National Guard in this statute accounting for its absence from the nineteen listed departments.

"Thus, Idaho law does not leave it to chance as to which entities are agencies or instrumentalities of the executive department. The constitution mandates that this be defined, and that mandate has been fulfilled. Again, the Idaho National Guard is not included in a reference to executive state agencies.

"E. *The Conclusion that the Idaho National Guard is Not a State Agency is Supported by the Unusual Hybrid Nature of the Guard.*

"The conclusion that the Idaho National Guard is not a state agency is supported by the Guard's history, which establishes the Guard as an unusual state-federal hybrid. The national guard in Idaho and other states is a state created and controlled entity. However, it is primarily funded by the United States and may be called into active federal service.

"The United States Supreme Court addressed the nature of national guards in *Maryland, for the Use of Levin v. United States,* 281 [381] U.S. 41 [85 S.Ct. 1293, 14 L.Ed.2d 205] (1964). In Maryland, the Court found that National Guard members may not be sued under the Federal Tort Claims Act, 28 U.S.C. Section 1346, regardless of whether they are active in a military or civilian role. The Court described the nature of the National Guard as follows:

The National Guard is the modern Militia reserved to the States by Art. I, § 8, cl. 15, 16 of the Constitution ... From the days of the Minutemen of Lexington and Concord until just before World War I, the various militias embodied the concept of a citizen army, but lacked the equipment and training necessary for their use as an integral part of the reserve force of the United States Armed Forces. The passage of the National Defense Act of 1916 materially altered the status of the militias by constituting them as the National Guard. Pursuant to power vested in Congress by [Art. I, § 8, cl. 15, 16], the Guard was to be uniformed, equipped, and trained in much the same way as the regular army, subject to federal standards and capable of being 'federalized' by units, rather than by drafting individual soldiers. In return, Congress authorized the allocation of federal equipment to the Guard, and provided federal compensation for members of the Guard, supplementing any state emoluments. The Governor, however, remained in charge of the National Guard in each State except when the Guard was called into active federal service; in most instances the Governor administered the Guard through the State Adjutant General, who was required by the Act to report periodically to the National Guard Bureau, a federal organization, on the Guard's reserve status. The basic struc-

ture of the 1916 Act has been preserved to the present day.

381 U.S. at 46–47 [85 S.Ct. at 1297] (footnotes omitted).

"Obviously, the Idaho National Guard is not a typical Idaho governmental entity. It operates under special rules and deserves special attention. It is not declared to be the 'state' in any Idaho statute nor can it be compared to a 'state agency' as that term is commonly used. The Idaho legislature has accorded it the requisite special attention and, in doing so, has established that it does not consider the Guard a state agency. Furthermore, the legislature has given due consideration to the scope of the Guard's immunities and liabilities, and the legislature has consistently, since 1974, intended the Guard to be liable for emergency related actions.

"Other states, too, have specifically excluded the military from their definition of state 'agency.' *See* Sections 2–4–102(2) and 2–3–102(d) Montana Code Annotated; Section 84–901(1), Nebraska Revised Statutes; Sections 233 B.001 and 233 B.039(1)(d), Nevada Revised Statutes Annotated.

"IV. THE LONGSTANDING AND CONSISTENT UNDERSTANDING OF THE IDAHO LEGISLATURE AND THE ADJUTANT GENERAL SUPPORTS APPELLANTS' POSITION.

"Under established principles of statutory construction, the duty of the courts when interpreting statutes is to give effect to the legislative intent. *Local 1494 of the International Association of Firefighters v. City of Coeur d'Alene*, 99 Idaho 630, 586 P.2d 1346 (1978). In that decision, this Court described how legislative intent is to be ascertained, stating:

> ... [i]n ascertaining this intent, not only must the literal wording of the statute be examined, but also account must be taken of other matters, 'such as the context, the object in view, the evils to be remedied, the history of the times and of the legislation upon the same subject, public policy, contemporaneous construction, and the like.' *In re Gem State*

*Academy Bakery*, 70 Idaho 531–541, 224 P.2d 529, 535 [1950].

99 Idaho at 630 [586 P.2d 1346] quoting *Messenger v. Burns*, 86 Idaho 26, 29–30, 382 P.2d 913, 915 (1963).

"In the case at bar, the history of legislation upon the same subject is particularly instructive. The Idaho legislature has frequently addressed the scope of immunity of the Idaho National Guard in a detailed manner, both immediately before and immediately after it passed the Disaster Preparedness Act. The statutory amendments and their legislative histories all demonstrate that the legislature and the Adjutant General consistently have believed, since 1974, that the Idaho National Guard is liable for acts performed during emergency relief actions.

"A.  *The 1974 Tort Claims Act Amendment.*

"Until a 1974 amendment, the Tort Claims Act would have explicitly rendered the Idaho National Guard and its employees immune from the present action. Prior to 1974, Section 6–904(5) stated as follows:

"A government entity shall not be liable for any claim which:

> 5. arises out of the activities of the Idaho national guard *when acting under a call of the governor,* or when engaged in combatant activities, or during a time of war. (Emphasis added).

"This action would have been dismissed as a result of the first clause in former Section 6–904(5) which protected the Guard 'when acting under a call of the governor.' In 1974, the Idaho legislature passed H 591, Ch. 167, which among other things, deleted the clause 'when acting under a call of the governor.' (The amendment also added exemptions for certain actions performed by the Guard when the federal government would be liable, except that it allowed claimants not compensated in whole or in part by the federal government to assert a claim under the Tort Claims Act.) Thus, the 1974 amendment to the Tort Claims Act explicitly evidenced an intention by the Idaho legislature to elimi-

nate a broad immunity for the Guard, thereby authorizing suits like this one.

## "B. *The Disaster Preparedness Act of 1975.*

"Less than twelve months after passage of the 1974 Tort Claims Act Amendment, the Idaho legislature passed the Disaster Preparedness Act, IDAHO CODE Sections 46–1001 *et seq.*, which includes Section 46–1017. Nothing in the legislative history to that Act evidences any intention to reverse course regarding the Idaho National Guard's liability as established by the 1974 Tort Claims Act Amendment. This is particularly notable because the Act, at Section 46–1008(4), contemplates a role for the Idaho National Guard in emergencies. In addition, then Adjutant General James S. Brooks: (1) addressed the House Transportation & Defense committee regarding the proposed Act on February 12, 1975, (2) was present at another meeting of that Committee on February 28, 1975, and (3) addressed the Senate Transportation Committee on March 11 and March 13, 1975. Yet, nowhere in the legislative history is there record of any reference by General Brooks to a change in the established scope of liability of the Guard.

## "C. *The 1976 Tort Claims Act Amendments.*

"Only one year after the Disaster Preparedness Act was signed into law, the Idaho legislature passed another amendment to the Tort Claims Act. House Bill 562, passed as Chapter No. 309, included numerous amendments to the Tort Claims Act, one of which provided for a defense of public employees sued on an individual basis for their actions performed in the scope and course of their employment. *See* Section 6–903(b), (c), and (d). Adjutant General Brooks, the same Adjutant General who spoke the year before in regard to the proposed Disaster Preparedness Act, addressed the House Judiciary, Rules and Administration Committee on March 11, 1976. The Minutes of that meeting provide as follows in regard to his comments:

General Brooks cited examples of extraordinary or *emergency missions* performed by the National Guard which could easily subject pilots and guardsmen to lawsuits and strongly supports the passage of H 562 as a means of providing a defense if actions are brought against employees of the Guard while performing their duties. (Emphasis added).

"General Brooks' testimony is important for several reasons. First, it demonstrates that only one year after passage of the Disaster Preparedness Act both the Adjutant General and the Idaho legislature believed that the Idaho National Guard remained liable for acts performed during emergencies. Obviously, employees of the Guard would require a defense only if they are not immune from suit. Second, the General's testimony evidences his concern for the vulnerability of employees of Idaho National Guards to suits—he 'strongly' supported the bill, which provided a defense for individual employees of the Idaho National Guards when sued under the Tort Claims Act. In contrast, he appeared several times before committees of the Idaho legislature in support of the Disaster Preparedness Act but never argued that it should be passed because it would render employees of the Guard immune from actions taken during emergencies. Surely, if he believed that the immunity of Section 46–1017 of the Disaster Preparedness Act reached the Idaho National Guard and its employees, he would have said so and used the point to argue in support of the bill. His failure to do so, and his acknowledgement in 1976 that employees of the Guard needed a defense for actions arising out of emergency missions, demonstrates that neither he nor the legislature either at the time of the passage of the Disaster Preparedness Act or one year later, believed that the Idaho National Guard was immune for emergency actions.

## "D. *The 1987 Tort Claims Act Amendment.*

"A recent amendment to the Tort Claims Act demonstrates that both the Adjutant General and legislature have maintained

their positions on the liability of the Guard. In 1987, Senate Bill 1161, which became Chapter 361, amended Section 6–904(5) of the Tort Claims Act, the same subsection amended in 1974 to eliminate the Guard's immunity when acting under a call of the Governor. SB 1161 closed a loophole in Section 6–904(5) by ensuring that the State of Idaho would not be liable for actions of the Guard in instances where the federal government had assumed full responsibility. Adjutant General Darrell V. Manning addressed the House Transportation & Defense Committee on March 12, 1987, in support of the bill. The Minutes addressing his comments provide as follows:

> *SB 1161* was presented to Committee by General Manning. It is the primary purpose of this bill to recognize the federal government's acceptance of responsibility for claims against the Idaho National Guard when on active duty or in training under certain federal authorizations. *This bill will not affect the continuing liability of the state when the Idaho National Guard is performing training or duty under state authority, as when called out by Governor during a state declared emergency.* General Manning stated the Idaho National Guard now comprises 50% of the United States defense. Passage of this bill would close a loop-hole and allow Federal government to assume proper responsibility. (Emphasis added).

Addendum, Exhibit D, page 2.

"Thus, in 1987, the Adjutant General reaffirmed the longstanding position that the Idaho National Guard is liable for actions taken during state declared emergencies. The Idaho Legislature also reaffirmed that position by passing the 1987 bill recommended by General Manning.

"If the legislative intent behind the Disaster Preparedness Act was to exempt the Idaho National Guard from actions taken during state declared emergencies, General Manning would have been aware of this, having been present during legislative deliberations on that bill. *See,* Minutes of February 28, 1975 House Transportation & Defense Committee, listing as guests Dar-

rell Manning as well as Adjutant General Brooks. Surely the legislature also would have been aware of what they had done. By legislating frequently on the precise scope of liability of the National Guard, the legislature has shown a detailed interest in that issue. Had that issue been a part of their deliberations in 1975 regarding the Disaster Preparedness Act, it would have been referred to somewhere along the line, and been recollected at the time of the 1976 and 1987 Tort Claims Act Amendments.

"Following the instruction of *Coeur d'Alene, supra,* the proper interpretation of Section 46–1017 must take into account its legislative history and the legislative histories of related statutes. A review of Section 46–1017 and legislative activity in connection with the Tort Claims Act demonstrates that the Idaho legislature frequently has addressed the scope of liability of the National Guard, but did not do so in the Disaster Preparedness Act. The legislature has never given any indication either at the time of passage of that Act or at any later time that the Act's immunity reached the Idaho National Guard. The legislature has maintained a consistent point of view on this issue since 1974, when it eliminated a broad immunity for the Guard and replaced it with narrow one which renders the Guard liable in this case. In addition, the Adjutant General also has consistently maintained that the Guard is liable for actions taken in state declared emergencies. The Adjutant General has shown significant involvement with legislative activity concerning the Idaho National Guard, and has frequently testified to legislative committees regarding the purpose and intent of bills addressing the Guard's scope of liability. Of particular significance is the fact that much of this activity by the legislature and the Adjutant General took place in 1974 and 1976, immediately before and immediately after passage of the Disaster Preparedness Act of 1975.

"Although the legislature has never varied from its consistent and longstanding position on the scope of liability of the Idaho National Guard, there has been a break in the ranks on the part of the Guard itself. Its longstanding position was dis-

carded after this lawsuit was filed. As noted above, Adjutant General Manning considered the Guard liable for actions performed during state declared emergencies at the time of his March, 1987 testimony before the legislature. Appellant's complaint was filed shortly thereafter, and then the position of the Guard changed overnight. Respondent's position on Section 46–1017 in this litigation is specious. It is designed solely to avoid liability towards the Firefighters, who suffered deaths and severe injuries as a result of the Guard's negligence in transporting them from the firelines. Respondents' position is an opportunistic one, and in direct conflict with the understanding since 1974 of the legislature and the Adjutant General. Respondents' position should be rejected as a matter of law, and the judgment of the district court below accordingly should be reversed.

"V. RESPONDENTS McCORD AND HERRON, AS GUARD EMPLOYEES, ARE LIABLE FOR THEIR NEGLIGENCE IN DISASTER–RELATED ACTIONS.

"As Appellants have demonstrated above, the Idaho National Guard is not immune under Section 46–1017. Therefore, it is subject to liability under the Tort Claims Act at Section 6–903(a). Since McCord and Herron were employees of the Idaho National Guard at the time of the accident, they also are subject to liability and may be sued for their acts of negligence causing the accident and the deaths and injuries to Appellants.

"VI. PUBLIC POLICY SUPPORTS REVERSAL OF THE DISTRICT COURT'S JUDGMENT.

"The interest of the citizens of Idaho would be supported by this Court's reversal of the District Court's dismissal of the case. Without such reversal, neither Idaho citizens nor others would have an incentive to fight any natural disasters in which the National Guard was involved. In return for a paltry hourly wage, long and irregular hours and dangerous conditions, such persons would be expected to risk their lives and bodies, benefiting the citizens of Idaho without hope of just compensation for injuries. The Guard, accepting a role in emergency firefighting activities, should not be allowed to expose persons to unnecessary risk or aggravate already threatening circumstances and then not be accountable for such conduct.

"It is important to note that the Guard itself does not engage in the actual fighting of emergencies. The Guard is brought in because it has equipment, especially heavy vehicles. Since those vehicles may not be utilized independently of the Guard, Guard personnel are used to drive those vehicles. Addendum, Exhibit B, page 1 and Exhibit C, page 7. Again, the Guard must be responsible for those tasks, difficult as they may be, that they undertake. The people who actively are involved in fighting emergencies and the people whose safety they protect will be affected beneficially by a reversal of the District Court.

"In addition, reversal of the judgment below will not discourage National Guard members from continuing their limited role in emergency fighting. Under Section 6–903(b), the Guard is required to 'provide a defense' to its employees and is 'responsible for the payment of any judgment.' Thus, Guard members are always financially protected for acts of negligence occurring within the scope of their employment.

"In the case of *Smith v. State*, 93 Idaho 795, 473 P.2d 937 (1970), the Idaho Supreme Court abolished the doctrine of sovereign immunity in Idaho as a defense in actions based upon the tortious acts of the State or any governmental unit acting in a proprietary capacity. The Court, in that decision, recognized that the doctrine of sovereign immunity 'runs directly contrary to the basic concept underlying the entire field of tort law that liability follows negligence and that individuals and corporations are responsible for the negligent acts of their agents and employees acting in the course of their employment ...' *Id.* at 800 [473 P.2d 937]. Thus the common law as now applied to the circumstances of the Firefighters' case provides for an action

against the state, [the] Guard, and McCord and Herron, as employees.

"The Tort Claims Act was adopted in 1971, largely in response to the invitation of the Idaho Supreme Court in *Smith, supra.* The common law of Idaho at the time of the adoption of the Tort Claims Act and which continues to this day does not recognize the doctrine of sovereign immunity. The Idaho legislature, however, in the Tort Claims Act, has provided for certain exceptions to liability yet 'the Idaho Act makes liability the rule.' *Sterling v. Bloom,* 111 Idaho 211, 723 P.2d 755 (1986). In *Sterling,* the Court, in quoting the United States Supreme Court's analysis of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 (1976 & Supp. V. 1981), stated the following:

'There is no justification for this Court to read exemptions into the Act beyond those provided by [the legislature]. (Citations omitted) Those exceptions which are expressly stated must be closely construed. (Citation omitted) We think that the proper objective of a court attempting to construe one of the subsections of 28 U.S.C. § 2680 [exceptions to the Federal Act] is to identify "those circumstances which are within the words and reason of the exception"—no less and no more.' (Citation omitted). *Id* at 215 [723 P.2d 755].

"The same rationale must apply to any claimed governmental immunity which would have the effect of preventing substantial justice by denying recovery to those who suffer injuries as a result of the negligence of government employees. The immunity provision in IDAHO CODE Section 46–1017, therefore, must be 'closely construed' and applied to circumstances which are within the 'words and reason' of the statute, 'no less and no more.' Section 46–1017 must not be broadly applied. To do so would subvert and destroy the aims and purposes espoused in the Tort Claims Act and would prevent the attainment of substantial justice.

"In the case of *Muzurek v. Skaar,* 60 Wis.2d 420, 210 N.W.2d 691 (1973), the Wisconsin court considered a case in which a National Guard truck driver became fatigued and crashed his truck injuring passengers and killing a fellow guardsman. Wisconsin's statutory scheme included two statutes that contained inconsistent language, similar to the case at issue. One statute provided that a guard member in performing military duty could assert a successful defense in a civil or criminal prosecution if he was acting 'in good faith or pursuant to any lawful military order.' Section 21.12, Wis.Stats. Another law required the State to pay a judgment entered against a guardsman who acted in good faith. Section 21.13, Wis.Stats. In Muzurek, the court found it necessary to determine the intent of the legislature and determined that the immunity provision was intended to codify the common law defenses generally afforded military personnel in the performance of their duties. Upon reviewing Wisconsin law, the court determined that the common law had never been applied in Wisconsin to grant a guardsman immunity from the suit from another guardsman for injuries negligently caused in performance of military duty. The court then held that the guardsman and National Guard were liable. *Muzurek, supra.* Applying that rationale to this case, it is evident that the Tort Claims Act is intended to provide coverage for the National Guard's negligence except while in federal training or duty. IDAHO CODE Section 6–904(4). Further, the Tort Claims Act makes the governmental entity subject to liability for money damages and requires them to provide a defense for employees acting within the course and scope of their employment or duties. The analogies to the Wisconsin case are manifest. As discussed above, the intent of the legislature overwhelmingly establishes that the Guard and its members must bear responsibility for their negligent actions other than in the course of military duty, IDAHO CODE Section 46–402, or while in federal training or duty, IDAHO CODE Section 6–904(4)."

Appellant's Brief, 11–35.

The district court's grant of summary judgment based on the provisions of I.C. § 46–1017 should be reversed.