*898 P.2d 1099*

**Wayne CROWN, Clark Bean and Steve Bean, Plaintiffs–Appellants,**

v.

**STATE of Idaho, The DEPARTMENT OF AGRICULTURE, Defendant–Respondent.**

No. 19874.

Court of Appeals of Idaho.

Feb. 8, 1994.

Rehearing Denied March 23, 1994.

Appeal Decided, see 127 Idaho 175, 898 P.2d 1086.

Lloyd J. Walker, Twin Falls, argued, for plaintiffs-appellants.

Elam, Burke & Boyd, Boise, for defendant-respondent. Jeffery J. Ventrella, argued.

WALTERS, Chief Judge.

This is an appeal from a summary judgment dismissing the plaintiffs' negligence action against the Idaho Department of Agriculture. The plaintiffs contend that the summary judgment should not have been entered and they also challenge the district court's order awarding the Department attorney fees for successfully resisting the plaintiffs'

motion to compel discovery. For the reasons stated below, we affirm.

## I. Facts and Procedural Background.

The following facts are gleaned from the record, which we have construed in a light most favorable to the plaintiffs. *See Bonz v. Sudweeks,* 119 Idaho 539, 808 P.2d 876 (1991). Wayne Crown, Clark Bean, and Steve Bean ("the Growers") are bean growers who deposited their 1988 bean crop for storage with the since-defunct Hawkins Warehouse, a licensed, bonded commodities warehouse located in Filer, Idaho. The Idaho Department of Agriculture ("the Department") is the governmental entity authorized to examine the books and contents of all commodities warehouses licensed in the state. *See* I.C. § 69–201, *et seq.* Pursuant to its statutory authority, the Department adopted a policy of inspecting each warehouse on a yearly basis. The objective of such an inspection was, in part, to ensure that the warehouse had on hand sufficient inventory to meet the demands of its depositors. Thus, the inspection procedures required that the Department's field examiners review the warehouse records to determine its obligations to depositors, and then to take an inventory of the warehouse's contents.

Late in April, 1988, Jerry Hawkins, the on-site manager of the Hawkins Warehouse, contacted the Department requesting that it immediately conduct its annual warehouse inspection of the facility. David Sparrow, the field examiner assigned by the Department to the Filer region, agreed. At the time he requested the inspection, Hawkins knew the warehouse's bean inventory was insufficient to meet its obligations. Attempting to conceal this fact, Hawkins, on the weekend before the inspection, moved into the warehouse 100 to 200 boxes filled with dirt and bean culls. He stacked these boxes four high, placing a fifth box of "good" beans on top, and then surrounded the stacks with the remaining boxes of good beans. In addition to disguising the physical inventory, Hawkins altered the warehouse records by having the bookkeeper "write-off" 40,000 cwt. of beans from the books, and by writing numerous checks reflecting the purchase of

30,000 cwt. of beans from individual growers—transactions which in fact never occurred.

Sparrow's inspection of the warehouse, begun May 3, 1988, failed to discover Hawkins' fraud. Although he questioned Hawkins about the substantial write-off of beans, Sparrow accepted, without further inquiry, Hawkins' oral explanation that the beans had merely been segregated from the commingled beans because they had been changed to treated seed. Sparrow's physical inventory of the warehouse also failed to discover the boxes of dirt and culls. Nonetheless, when the inventory was completed, the warehouse books still showed a shortage of 6,475 cwt. of beans. To explain the discrepancy, Hawkins showed Sparrow four checks which purportedly established that the warehouse had purchased the beans necessary to make up for the deficiency. Sparrow accepted Hawkins' explanation, even though none of the checks shown him had been negotiated by, or even delivered to, the payees.

Sparrow completed his inspection on May 9, 1988, without detecting the shortage, and the Hawkins Warehouse continued in full operation. In the latter part of August, the warehouse began receiving the 1988 bean crop, including beans delivered to it by the Growers. The warehouse continued receiving beans until November 21, 1988, when an internal audit revealed a serious inventory deficiency. The warehouse promptly notified the Department and voluntarily ended its public operation. Upon receiving the notice, the Department immediately suspended the warehouse's license, and, after verifying the extent of the commodity shortfall, seized the warehouse in accordance with the Bonded Warehouse Law. See I.C. § 69–236.

On January 5, 1989, the Growers filed a class action in the state district court naming various defendants, including the Department. On January 6, 1989, the Hawkins Warehouse filed a chapter 11 petition in bankruptcy, which stayed the state court action. The Growers then initiated an adversarial proceeding in the bankruptcy court,

naming the Department as one of the defendants. On April 25, 1989, the bankruptcy court entered an order dismissing the Department from the adversarial proceeding. When the Growers' state court action against the Department was subsequently dismissed due to a procedural irregularity,[1] the Growers refiled their action on November 2, 1990. In their complaint, the Growers claimed the Department was responsible for their losses, alleging three theories of recovery: negligent inspection; negligent failure to publicize findings; and negligent failure to seize the warehouse.

After a litigious period of discovery, the Department moved for summary judgment seeking to dismiss the Growers' complaint on grounds of governmental immunity, res judicata, and lack of proximate cause. The district court granted the Department's motion, holding that the Idaho Tort Claims Act provided immunity to the Department from each of the claims asserted by the Growers. This appeal followed.

## II. Issues on appeal.

■ As a preliminary matter, the Department raises the Growers' failure to provide in their appellate brief a "statement of issues" as required by the rules of appellate procedure, I.A.R. 35(a)(4). Generally, the failure to include an issue in the statement of issues will eliminate the issue from consideration on appeal. See State v. Prestwich, 116 Idaho 959, 783 P.2d 298 (1989). However, this rule may be relaxed where the issue or issues were addressed by authorities cited or arguments contained in the briefs. Id., 116 Idaho at 961, 783 P.2d at 300. Thus, although the Growers failed to provide a statement of issues, we will construe their arguments and the authority presented in their brief as raising the following issues for our review:

1. Did the district court err in granting the Department's motion for summary judgment on the Growers' claim of negligent inspection?

1. The Growers had failed to file a notice of tort claim 180 days before commencing their action, as required by I.C. § 6–905.

2. Did the district court err in awarding attorney fees to the Department under I.R.C.P. 37(a)(4) upon denying the Growers' motion to· compel discovery?

## III. Summary Judgment.

The Growers assert the district court erroneously granted the Department's motion for summary judgment, and that its claim of negligent inspection should be remanded for trial on the merits. The Department maintains that summary judgment was properly granted, arguing that the district court's order may be sustained on grounds of governmental immunity, res judicata, or lack of proximate cause. As explained below, we hold that the Department was entitled to summary judgment based on the governmental immunity granted by I.C. § 6–904B(4).

### A. Standard of Review.

■ On appeal from an order granting summary judgment, we freely review the pleadings, depositions, and admissions on file, together with affidavits, if any, to determine whether there is a genuine issue of material fact to be tried, and whether the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c). The standards ordinarily applicable to a summary judgment motion require the trial court, and the appellate court on review, to liberally construe all facts existing in the record, and to draw all reasonable inferences therefrom, in favor of the party opposing the motion. *Harris v. State, Dept. of Health & Welfare,* 123 Idaho 295, 847 P.2d 1156 (1992); *Anderson v. Ethington,* 103 Idaho 658, 651 P.2d 923 (1982).

■ However, where, as in this case, no jury has been requested and the facts are to be tried to the court, a somewhat different standard is employed. If the evidentiary facts are not in dispute, the trial court may grant summary judgment despite the possibility of conflicting inferences, because the court alone will be in the position of resolving the conflicting inferences at trial. *Riverside Development Co. v. Ritchie,* 103 Idaho 515, 519, 650 P.2d 657, 661 (1982). Findings which are based on such inferences will not be disturbed on appeal if the uncontroverted

evidentiary facts are sufficient to justify them. *Id.*

### B. Governmental Immunity under I.C. § 6–904B.

In considering a motion for summary judgment requesting dismissal of a complaint against a governmental entity under the Idaho Tort Claims Act, the court's initial inquiry is whether the recovery sought in the complaint is based on a tort action recognized under the laws of Idaho. I.C. § 6–903(a). If it is, the court then must determine whether an exception to liability found in the Tort Claims Act shields the government's alleged misconduct from liability. *See* I.C. §§ 6–904, 6–904A, 6–904B; *Olguin v. City of Burley,* 119 Idaho 721, 810 P.2d 255 (1991); *Walker v. Shoshone County,* 112 Idaho 991, 739 P.2d 290 (1987).

■ Applying this analysis to the Growers' claim for negligent inspection, we answer the first question in the affirmative. Under Idaho case law, damages may be recovered for losses caused by a negligent regulatory inspection. *Oppenheimer Indus. v. Johnson Cattle Co.,* 112 Idaho 423, 732 P.2d 661 (1986); *see also Lewis v. Estate of Smith,* 111 Idaho 755, 727 P.2d 1183 (1986); *Jones v. City of St. Maries,* 111 Idaho 733, 727 P.2d 1161 (1986). Hence, the Department may be subject to liability on the Growers' claim unless a statutory exemption applies.

■ The Department asserts that I.C. § 6–904B provides such an exemption. That statute states, in relevant part:

A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent and without gross negligence or reckless, willful and wanton conduct as defined in section 6–904C, Idaho Code, *shall not be liable for any claim which arises out of the failure to make an inspection, or the making of an inadequate inspection of any property, real or personal,* other than the property of the governmental entity performing the inspection.

I.C. § 6–904B(4), *as added by* 1988 Idaho Sess.Laws ch. 324, § 3 (emphasis added).

This "inspection exemption" became law on July 1, 1988. *See* IDAHO CONST. art. III, § 22; I.C. § 67–510.[2] As noted by both parties, the operative events giving rise to the Growers' claim straddle the effective date of the statute: the *conduct* upon which the Growers' claim is based, *i.e.,* the Department's inspection, occurred in May, 1988, before the statute went into effect. However, the Growers did not sustain any *loss,* and therefore they did not have a claim, until they deposited their beans with the warehouse in August, 1988.

The Growers argue that because I.C. § 6–904B postdates the Department's negligent conduct, the exemption is inapplicable and the Supreme Court's decision in *Oppenheimer* controls. The Department maintains, on the other hand, that because the Growers' cause of action arose after I.C. § 6–904B became law, the statutory exemption does apply. A statute must be construed according to its plain meaning. *Harris,* 123 Idaho at 300, 847 P.2d at 1161. Thus, although we believe the policies underlying I.C. § 6–904B are aimed at shielding government *conduct*— and thus the statute arguably should not apply to exempt conduct occurring before the statute's effective date—the statute's language plainly speaks to precluding government *liability on claims* arising out of inadequate inspections. Therefore, we hold that I.C. § 6–904B is applicable in determining whether the Department can be held liable on the Growers' claim.

**C. Absence of malice or criminal intent, and of gross negligence, or reckless, willful and wanton conduct.**

█ Having determined that I.C. § 6–904B applies in this case, we next consider whether its provisions operate to shield the Department from responsibility. The statute makes clear that the immunities it enumerates apply *only if* the government's com-

plained-of acts or omissions occurred "without malice or criminal intent," and "without gross negligence or reckless, willful and wanton conduct as defined in I.C. section 6–904C." I.C. § 6–904B(4).

"Malice," although not defined in the statute, requires a showing of *intentional* commission of an unlawful or wrongful act, combined with ill will. *Anderson v. City of Pocatello,* 112 Idaho 176, 188, 731 P.2d 171, 183 (1986). Idaho Code § 6–904C defines "reckless, willful and wanton conduct" as being present "only when a person *intentionally and knowingly* does or fails to do an act creating unreasonable risk of harm to another, and *which involves a high degree of probability that such harm will result.*" (Emphasis added).

The Growers do not assert, nor is there substantial evidence in the record to show, that there was any knowing or intentional wrongdoing on the part of Mr. Sparrow, or that he acted with ill will. Instead, the Growers argue that the evidence in the record was sufficient to create a genuine issue of fact concerning whether Mr. Sparrow conducted his inspection of the Hawkins Warehouse "without gross negligence." "Gross negligence," as defined in I.C. § 6–904C, means:

> the doing or failing to do an act which a reasonable person in a similar situation and of similar responsibility would, with a minimum of contemplation, be inescapably drawn to recognize his or her duty to do or not do such act *and that failing that duty shows a deliberate indifference to the harmful consequences to others.*

(Emphasis added.) Thus, to establish gross negligence under the statute, there must be evidence showing not only the breach of an obvious duty of care, but also showing a

---

**2.** Idaho Code § 67–510 provides:
No act shall take effect until July 1 of the year of the regular session or sixty (60) days from the end of the session at which the same shall have been passed, whichever date occurs last, except in case of emergency, which emergency shall be declared in the preamble or body of the law. . . .

The 1988 session of the Legislature adjourned March 31, 1988. July 1, 1988, is later than sixty days after the date of adjournment, and consequently is the effective date of the statute inasmuch as neither the preamble nor the body of the enactment contained an emergency provision. 1988 Idaho Sess.Laws, ch. 324, p. 983–85.

"deliberate indifference" to the harmful consequences to others.[3]

As noted earlier, this case was to be tried to the court rather than before a jury. Thus, even if Mr. Sparrow's conduct could be reasonably construed as manifesting a deliberate indifference toward others, the trial court was not required to draw that inference, but was free to arrive at the most probable inference. *Ritchie*, 103 Idaho at 519, 650 P.2d at 661. In its memorandum decision, the trial court expressly found gross negligence on the part of Mr. Sparrow to be lacking. After reviewing the record, including the deposition testimony of Mr. Sparrow, we conclude that uncontroverted evidence sufficiently justified an inference that Mr. Sparrow did not act, or omit to act, with deliberate indifference, and hence that he was not grossly negligent as defined by I.C. § 6–904C. Accordingly, we uphold the district court's finding that gross negligence did not exist in this case.

We hold that the district court properly concluded that I.C. § 6–904B(4) applies to grant the Department immunity from liability on the Growers' negligent inspection claim. Because we affirm the district court's summary judgment order on grounds of governmental immunity, we need not address the Department's alternative arguments of res judicata and lack of causation.

### IV. Attorney Fees under I.R.C.P. 37(a)(4).

The Growers also appeal from the district court's September 30, 1991, order requiring that they pay the Department $2,355.24 in attorney fees. The court granted fees to the Department for successfully defending the Growers' February 4, 1991, motion to compel interrogatory answers.

The record reflects that on January 4, 1991, the Growers served interrogatories upon Dr. Greg Nelson, the Director of the Department of Agriculture. When they received no response, the Growers, on February 4, 1991, moved to compel pursuant to I.R.C.P. 37(a)(2). On June 21, the Department filed an opposing memorandum pointing out that Dr. Nelson, who was not a party to the lawsuit, was not required to answer or sign the interrogatories under I.R.C.P. 33. After holding a hearing on the matter, the district court entered an order on July 22 denying the Growers' motion. On July 26, the Department moved pursuant to Rule 37(a)(4)[4] to recoup the $2,950.24 it had expended in defending the motion to compel. The Growers filed several responsive pleadings challenging the amount claimed by the Department as excessive. On September 24, 1991, the district court issued a memorandum decision finding that the Department was entitled to a reasonable attorney fee but in a reduced amount, $2,355.24. On September 30, 1991, the court entered an order requiring the Growers to pay that sum to the Department.

On appeal, the Growers do not challenge the amount of the award, but they instead take issue with opposing counsel's conduct in seeking attorney fees at all. In reviewing the Growers' arguments, however, it is apparent that they have confused the course of proceedings relating to their motion to compel interrogatory answers from Dr. Nelson,

---

3. We observe that by requiring a showing of "deliberate indifference," the legislature has defined the term "gross negligence" as differing from ordinary negligence not only in degree—as is the case at common law—but in kind. *See* PROSSER AND KEETON ON TORTS § 34 (5th ed. 1984).

> [M]ost courts consider that "gross negligence" falls short of a reckless disregard of the consequences, and differs from ordinary negligence only in degree, not kind. There is, in short, no generally accepted meaning [of "gross negligence"]; but the probability is, when the phrase is used, that it signifies more than ordinary inadvertence or inattention, but less per-

haps than conscious indifference to the consequences.
*Id.*, at 212.

4. Idaho Rule of Civil Procedure 37(a)(4) provides, in relevant part,

> If the motion [to compel] is denied, the court shall, after opportunity for hearing, require the moving party or the attorney advising the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust....

with their subsequent motion to compel interrogatory answers from the Office of Risk Management. The latter motion was declared moot in the district court's summary judgment decision. The Growers have failed to show any error in the district court's decision to order that they pay the Department $2,355.24. Accordingly, we will not disturb that order on appeal.

### Conclusion

We conclude that the district court correctly ruled that I.C. § 6–904B(4) exempts the Department from liability on the Growers' negligent inspection claim. The summary judgment entered against the Growers is affirmed. Finding no error concerning the district court's grant of attorney fees under I.R.C.P. 37, we also affirm that order. The respondent Department of Agriculture is entitled to an award of its costs pursuant to I.A.R. 40. No attorney fees are awarded on appeal.

LANSING and PERRY, JJ., concur.