16 P.3d 278

### S. GRIFFIN CONSTRUCTION, INC. and Sean G. Phillips, Plaintiffs–Appellants,

v.

### CITY OF LEWISTON, and its employees, Charles Borcich, Building Inspector, and Bud Van Stone, Public Works Director; City of Lewiston Fire Department, and its employees, Thomas Tomberg, Fire Chief, Dave Oglesbee, Fire Marshall; A & R Construction, Inc.; William F. Albright, doing business as M.L. Albright & Sons, a sole proprietorship; and Peter Bowling, Defendants–Respondents.

No. 25554.

Supreme Court of Idaho.
Lewiston, October 2000 Term.

Dec. 22, 2000.

Landeck, Westberg, Judge & Graham, P.A., Moscow, for appellants. Ronald J. Landeck argued.

Don L. Roberts, Lewiston City Attorney; Clements, Brown & McNichols, P.A., Lewiston; Paine, Hamblen, Coffin, Brooke & Miller, LLP, Spokane and Coeur d'Alene, for respondents.

Don L. Roberts argued for respondent, City of Lewiston; Peter C. Erbland argued for respondent, A & R Construction.

KIDWELL, Justice

Plaintiff–Appellant Griffin appeals from the district court's grant of summary judgment: 1) dismissing defendant A & R, the wrecking ball operator, from the case; 2) determining that an emergency had properly been declared by the City of Lewiston under the State Disaster Preparedness Act; and 3) construing the Disaster Preparedness Act to provide immunity to all respondents for a period of seven days.

## I.

### FACTS AND PROCEDURAL HISTORY

On March 4, 1994, a large fire broke out in the downtown area of Lewiston, Idaho. The fire started in the Weisgerber building and spread to the adjacent Beehive and Beach buildings. City officials, including Bud Van Stone, the Public Works Director, and Mark Arneson, Mayor Pro Tem, arrived at the scene on that morning. The Lewiston City Council met at the scene and passed Resolution No. 94–40, thus declaring a state of emergency.

A & R, a demolition company, was called to the scene by Van Stone, but was asked to delay any demolition work until the FBI arson team had inspected the site. After the city council resolution was passed, A & R was told by the Fire Chief, Thomas Tomberg, that an emergency had been declared and that A & R was to demolish certain walls. Later that day, A & R knocked down specific walls of the Weisgerber, Beach and Beehive buildings under the direction of Tomberg.

The Adams building stood adjacent to the Beach building and shared a common wall. The second and third floors of the Adams

building were in the process of being remodeled to be used as rental units when the fire broke out. The Adams building was structurally damaged when the common masonry wall it shared with the Beach building was demolished. This damage was due to the fact that floor joists were connected to the common wall by steel straps. The City of Lewiston subsequently condemned the unoccupied portions of the Adams building. The owner of the Adams building, Griffin, argues that these straps should have been disconnected prior to the demolition work.

A complaint was filed on February 28, 1996, by plaintiff, S. Griffin Construction Inc. (Griffin), the owner of the Adams building, and Sean G. Phillips (Phillips), the sole shareholder of Griffin. The complaint alleged gross negligence or negligence, negligent supervision, grossly negligent/inadequate inspection or failure to inspect, and negligent withdrawal of lateral support. The City, various city employees and officials, the Fire Department, various employees of the Fire Department, Pete Bowling (the owner of the Weisgerber, Beehive and Beach buildings), and A & R and/or Albright (another company called in to assist with the demolition and clean-up) were all named as defendants.

In response to the complaint, the City of Lewiston and its employees asserted three affirmative defenses: 1) failure to state a claim upon which relief can be granted, 2) plaintiff's failure to comply with notice requirements of the Idaho Tort Claims Act, and 3) immunity under the Idaho Tort Claims Act. The district court subsequently ruled that the notice complied with the requirements of the Idaho Tort Claims Act.

On July 17, 1997, defendant A & R Construction moved for summary judgment dismissal of the case. On August 7, 1997, defendant City of Lewiston and its employees also moved for summary judgment. The plaintiff responded to the City's motion by asserting the existence of genuine issues of material fact as to whether the City's resolution was a valid declaration of a local disaster emergency, whether the damage caused to plaintiff's property occurred during a state of declared emergency, and whether the City's conduct in directing the demolition of the Beach building was in furtherance of the purposes of the Resolution and Act.

The plaintiff responded to A & R's motion by asserting that genuine issues of material fact existed as to whether A & R was grossly negligent, whether A & R acted under a contract with the City, whether A & R acted under a valid declaration of a local disaster emergency, whether, if the declaration was valid, the damage caused to plaintiff's property occurred during a state of declared emergency, whether A & R was immune under the act, whether A & R's demolition work was in furtherance of the purposes of the Resolution and Act, and whether A & R's demolition work was authorized by the Resolution.

An order was entered on October 23, 1997, granting summary judgment in part and denying it in part. The court granted summary judgment on several issues, finding the Resolution was a valid declaration of a local disaster emergency, the actions of the City and A & R occurred during a state of declared emergency, A & R's demolition work was in furtherance of the purposes of the Resolution and Act, and A & R's demolition work was authorized by the Resolution. Further, the district court denied summary judgment and found that a genuine issue of material fact existed as to if A & R acted under a contract or exceeded the contract and if A & R acted with negligence.

On September 29, 1998, A & R filed a renewed motion for summary judgment of dismissal, asserting that the two issues the court had previously denied on summary judgment were resolved in its favor following the completion of discovery. The court granted summary judgment for A & R on December 22, 1998. The plaintiffs moved for reconsideration, but this motion was denied by the court following a hearing on February 25, 1999. The City of Lewiston filed a renewed motion for summary judgment on January 19, 1999. The court subsequently dismissed plaintiff's amended complaint against A & R Construction in a judgment entered on March 24, 1999. The order from March 24, 1999, also denied defendant Albright's motion for summary judgment, and

granted the City of Lewiston's renewed motion for summary judgment as to events occurring during the declared state of emergency, but denied the motion as to events that occurred outside the declared state of emergency. The court awarded costs to A & R Construction in the sum of $4,369.34.

## II.

## STANDARD OF REVIEW

 On appeal from the grant of a motion for summary judgment, this Court employs the same standard as used by the district court originally ruling on the motion. *Scona, Inc. v. Green Willow Trust,* 133 Idaho 283, 286, 985 P.2d 1145, 1148 (1999). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). In an appeal from summary judgment, this Court will determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law. *Coghlan v. Beta Theta Pi Fraternity,* 133 Idaho 388, 400–01, 987 P.2d 300, 312–13 (1999). The Court should liberally construe facts in favor of the non-moving party, together with all reasonable inferences from the evidence. *Id.* The existence of disputed facts will not defeat summary judgment when the plaintiff fails to establish a prima facie case on which the plaintiff will bear the burden of proof at trial. *West v. Sonke,* 132 Idaho 133, 138, 968 P.2d 228, 233 (1998).

## III.

## ANALYSIS

**A. MATERIAL ISSUES OF FACT DO NOT EXIST AS TO WHETHER THE CITY PROPERLY DECLARED A STATE OF EMERGENCY UNDER THE DISASTER PREPAREDNESS ACT.**

The procedural aspects of the State Disaster Preparedness Act are set forth as follows:

(1) A local disaster emergency *may be declared only by a mayor* or chairman of the county commissioners within their respective political subdivisions. *It shall not be continued or renewed for a period in excess of seven (7) days* except by or with the consent of the governing board of the political subdivision. Any order or proclamation declaring, continuing, or terminating a local disaster emergency *shall be given prompt and general publicity and shall be filed promptly* with the local county recorder.

(2) The effect of a declaration of a local disaster emergency is to activate the response and recovery aspects of any and all applicable local or intergovernmental disaster emergency plans and to authorize the furnishing of aid and assistance thereunder.

(3) No intergovernmental agency or official thereof may declare a local disaster emergency, unless expressly authorized by the agreement pursuant to which the agency functions. However, an intergovernmental disaster agency shall provide aid and services in accordance with the agreement pursuant to which it functions.

I.C. § 46–1011 (emphasis added).

The Resolution passed by the City on March 1, 1994, read as follows:

RESOLUTION 94–40

A RESOLUTION DECLARING A STATE OF EMERGENCY FOR THE FIRE OCCURRING ON MARCH 1, 1994, AT FIFTH AND MAIN STREET IN DOWNTOWN LEWISTON AND PROVIDING AN EFFECTIVE DATE

WHEREAS, a fire that occurred at Fifth and Main Street in downtown Lewiston on March 1, 1994, has destroyed three buildings and is causing additional hazards to the properties and residences west of said buildings due to smoke inhalation and water related damage.

WHEREAS, Fifth and Main is a major intersection for the City of Lewiston and traffic is inhibited by the shell of said buildings and many businesses in the

downtown area cannot be opened for business until the fire is fully extinguished.

BE IT RESOLVED BY THE MAYOR AND THE COUNCIL OF THE CITY OF LEWISTON, IDAHO

*SECTION 1:* An emergency as defined in Section 46–1002, Idaho Code and Lewiston City Code Section 12–1 is in existence in the City of Lewiston, Idaho.

*SECTION 2:* Public and private buildings and facilities and private businesses are in imminent danger of further damage.

*SECTION 3:* The emergency exists and local public and private resources are inadequate to provide full compensation, therefore State and Federal assistance is required pursuant to Title 46, Chapter 10 of the Idaho Code and other State and Federal laws pertaining to disaster emergencies and assistance.

### Authorization of the Mayor Pro Tem

■ Plaintiff–Appellant Griffin argues that Mark Arneson was not authorized to declare the state of emergency since he was Mayor Pro Tem, and not the Mayor. Arneson met with the Lewiston City Council on March 1, 1994. During the course of the meeting, Resolution No. 94–40 was passed, declaring a state of emergency.

The district court judge noted that "under the Lewiston City Code § 2–23 a mayor pro tem 'shall assume the powers and duties of the mayor in the mayor's absence.'" As noted by the district court judge, no procedural error resulted from the fact that Arneson was the Mayor Pro Tem, and not the Mayor.

### Failure to Publicize and Failure to File with County Recorder

■ According to Griffin, the Resolution was not filed until March 24, 1997, over three years after the date of the fire and after this lawsuit commenced. Griffin also contends that the Resolution was not given prompt and general publicity. Section 46–1011(1) requires "any order or proclamation declaring ... a local disaster emergency **shall be given prompt and general publicity and shall be filed promptly** with the local county re-

corder." I.C. § 46–1011(1) (emphasis added).

The City contends that the Lewiston daily newspaper and television station covered and reported on the special meeting held by the City Council wherein the state of emergency was declared. The City and A & R both admit that the Resolution was not promptly recorded, however, they maintain that the late recording of the Resolution had no impact on public notification of the emergency in relation to the work done by the defendants.

The district court found no nexus between the failure to record the emergency declaration and compliance with the Act. This Court finds that the City substantially complied with the requirements set forth in the State Disaster Preparedness Act. Although the City should have promptly recorded the Resolution, failure to do so was harmless error.

### Failure to Terminate the Emergency Declaration

■ Griffin contends that because the City did not declare when the emergency terminated, the provisions of the Act were not followed. Idaho Code section 46–1011(1) states that the emergency "shall not be continued or renewed for a period in excess of seven (7) days" and that any order or proclamation continuing or terminating a local disaster emergency shall be publicized and recorded.

The district court found that "a local state of emergency would last the seven day limit imposed by the Idaho Code, unless an authorized official or the council amended or repealed the Resolution."

The Act does not specify that the state of emergency must be terminated or that an "end date" must be declared. The fire was declared fully extinguished on March 5, 1994, and the specific provisions in the Resolution include language indicating that the City was not only worried about the spread of fire, but also the danger of smoke inhalation, water damage, and danger to pedestrians and vehicular traffic as a result of the damaged buildings. It was appropriate for the emergency to be in effect for the seven day peri-

od. There was no specific requirement for the City to declare the termination of the emergency.

### Failure to Summon State Emergency Assistance

■ Griffin contends that no evidence has been presented to demonstrate that state emergency assistance was called in to supplement the City's disaster relief efforts. Consequently, an "emergency" as defined by the Act, did not occur. As defined in I.C. § 46–1002, an "emergency" "requires state emergency assistance to supplement local efforts to save lives and protect property or to avert or lessen the threat of disaster." *Id.*

The City noted that fire units from Asotin County, Washington, Clarkston, Washington, Pullman, Washington, and a private fire unit from the Potlatch Corporation all responded to the fire at the request of the City. The Resolution declaring the state of emergency stated, "The emergency exists and local public and private resources are inadequate to provide full compensation, therefore State and Federal assistance is required pursuant to Title 46, Chapter 10 of the Idaho Code and other State and Federal laws pertaining to disaster emergencies and assistance." The district court found that the Act was not violated since § 46–1011, which sets forth the procedural aspects of the Act, does not require the summoning of state emergency assistance. Instead, the "state emergency assistance" provision is found within the definition of emergency in I.C. § 46–1002.

The Resolution was not defective because state emergency assistance was not summoned. Although the definition of "emergency" within the Act requires the summoning of state emergency assistance, the fact that fire units from surrounding areas were called in satisfies this requirement.

The City of Lewiston substantially complied with the procedural requirements set forth in the Disaster Preparedness Act. Consequently, the state of emergency was properly declared and the City and A & R are subject to the immunity provided within the Act.

### B. MATERIAL ISSUES OF FACT DO NOT EXIST AS TO WHETHER A & R EXCEEDED THE SCOPE OF ITS CONTRACT TO PERFORM DEMOLITION SERVICES FOR THE CITY.

■ The State Disaster Preparedness Act provides immunity for "any person, firm, corporation, or entity **under contract** with them to provide equipment or work on a cost basis to be used in disaster relief...." I.C. § 46–1017 (emphasis added). Plaintiff–Appellant, Griffin, contends that even if A & R did not act with gross negligence and thus, was qualified for the immunity provided in the Act, A & R exceeded the scope of the contract when it demolished the Adams building. Consequently, A & R should not be able to escape liability for its negligent acts unrelated to the Act.

The facts indicate that A & R did not exceed the scope of its contract with the City when it demolished specific walls of the Weisgerber, Beach, and Beehive buildings under the direction of Fire Chief Tomberg. Consequently, the decision of the district court granting summary judgment on this issue is affirmed.

### C. A & R'S DEMOLITION WORK WAS DONE IN FURTHERANCE OF THE PURPOSE OF THE ACT AND RESOLUTION.

■ The policies and purposes of the State Disaster Preparedness Act are set forth in I.C. § 46–1003. Among the purposes are "to prevent and reduce damage, injury, and loss of life and property resulting from natural or man made catastrophes" and "to authorize and encourage cooperation in disaster prevention, preparedness, response, and recovery" and "to provide for coordination of activities relating to disaster prevention, preparedness, response, and recovery by all state agencies...." I.C. §§ 46–1003(2),(6) and (7).

A & R cites to *Marty v. State,* 117 Idaho 133, 143, 786 P.2d 524, 534 (1989), in support of the position that the Act is similar to the common law doctrine of public necessity and that the destruction of property in some limited circumstances is justified. *Id.* Citing the U.S. Supreme Court case *United States v.*

*Caltex, Inc.,* 344 U.S. 149, 73 S.Ct. 200, 97 L.Ed. 157 (1952), the Court noted, "[T]he common law ha[s] long recognized that in times of imminent peril—such as when a fire threatened a whole community—the sovereign could, with immunity, destroy the property of a few that the property of many and the lives of many more could be saved." *Marty,* 117 Idaho at 143, 786 P.2d at 544. In *Marty,* this Court recognized the abrogation of the common law doctrine of public necessity by the passage of the Disaster Preparedness Act. *Id.*

Recovery efforts are clearly contemplated as a purpose behind the Act. A & R was called to the scene of the fire on March 1, 1994, in order to remove portions of masonry walls that were determined to be a threat to public safety because they were adjacent to a public right of way. Fire Chief Tomberg confirmed that the demolition of the walls of the Weisgerber, Beehive, and Beach buildings was necessary as they posed a hazard to the public from the danger of falling or from further spreading of the fire.

The demolition of the masonry walls falls within the purposes of the Act. Consequently, the district court decision granting summary judgment on this issue is affirmed.

## D. DAMAGE CAUSED TO GRIFFIN'S BUILDING OCCURRED DURING A DECLARED STATE OF EMERGENCY.

"Disaster" is defined in the Disaster Preparedness Act as an "occurrence or imminent threat of widespread or severe damage, injury, or loss of life or property resulting from any natural or manmade cause, including but not limited to fire, flood, earthquake, windstorm, wave action, volcanic activity, explosion, riot, or hostile military or paramilitary action." I.C. § 46–1002(3). " 'Emergency' means occurrence or imminent threat of a disaster or condition threatening life or property which requires state emergency assistance to supplement local efforts to save lives and protect property or to avert or lessen the threat of a disaster." I .C. § 46–1002(4).

In *Baca v. State,* 119 Idaho 782, 810 P.2d 720 (1991), this Court examined the immuni-ty provision and ultimately found that it did apply to National Guard members who acted negligently while fighting a fire. *Id.* at 795, 810 P.2d at 733. The Court noted, "Fire fighting is precisely the type of activity that I.C. § 46–1017 was intended to cover. As such, the statute provides immunity to those state agencies involved in disaster relief efforts ." *Id.* at 784, 810 P.2d at 722.

According to Fire Chief Tomberg, the fire was under control at approximately 6:49 a.m., but was not completely put out. Tomberg also testified that Dave Oglesbee, the Fire Marshall, was almost injured when a wall collapsed and a "wash of bricks came right up against him and another fire fighter." The fire was not officially "extinguished" until March 5, 1994. Additionally, the Resolution specifically refers to the danger of water damage and smoke inhalation.

These facts indicate that even though the fire was "controlled" on March 1, the ramifications of the fire were still considered threats to the people of Lewiston. Consequently, the district court decision finding that the demolition occurred during the "emergency" is affirmed.

## E. MATERIAL ISSUES OF FACT EXIST AS TO WHETHER A & R ACTED WITH GROSS NEGLIGENCE.

"The Disaster Preparedness Act establishes the state's policies, purposes and procedures to plan and prepare for and deal with disasters and emergencies." *Baca,* 119 Idaho at 786, 810 P.2d at 724. This Act provides immunity for the state and its agencies, and for "any person, firm, corporation or entity under contract with them to provide equipment or work on a cost basis to be used for disaster relief ... for the death of or any injury to persons or damage to property as a result of such activity." I.C. § 46–1017. This immunity does not apply in cases of willful misconduct or gross negligence. *Id.*

### Negligence

In this case, the Court need not determine whether A & R was negligent. The City substantially complied with the procedures needed to properly declare a state of emer-

gency, A & R did not exceed the scope of the contract by the demolition work it performed, A & R's demolition work was done in furtherance of the Act and Resolution, and the damage to Griffin's building occurred during a declared state of emergency. Consequently, even if A & R did act negligently, it is protected by the immunity provided in the Disaster Preparedness Act.

### Gross Negligence

■ As mentioned above, the State Disaster Preparedness Act provides immunity for the state and its agencies, as well as for businesses working under contract for the state in disaster relief efforts, except in cases of gross negligence or willful misconduct. I.C. § 46–1017. Gross negligence is not defined within the Act, however this Court has previously defined the term.

This Court discussed the meaning of "gross negligence" in a case dating back to 1910 involving an incorrect message sent by a telegraph company. *Strong v. Western Union Telegraph Co.*, 18 Idaho 389, 405–06, 109 P. 910, 916 (1910). The Court explained the various interpretations of "gross negligence," and found the following definitions of gross negligence to be supported by the weight of authority: 1) "[T]he want of even a slight care and diligence," 2) "[T]he want of that diligence that even careless men are accustomed to exercise," and 3) "[T]he want of that care which every man of common sense, however inattentive he may be, takes of his own property...." *Id.*

The application of a gross negligence standard has appeared before this Court various times in the context of automobile accidents. The definition of gross negligence was considered by this Court in *Hayslip v. George*, 92 Idaho 349, 352, 442 P.2d 759, 762 (1968).[1] The Court noted that gross negligence is not synonymous with willful or wanton misconduct and clarified the distinction between gross negligence and "reckless disregard." *Id.* at 352–53, 442 P.2d at 762–63. Citing an Oregon case, the Court found, "Gross negligence could then be considered as describing conduct of the driver when he does an act not knowing of the high degree of manifest dan-

ger but under the circumstances where he should have known." *Id.* at 353, 442 P.2d at 763 (citing *Williamson v. McKenna*, 223 Or. 366, 354 P.2d 56 (1960)).

Likewise, in *Mattson v. Bryan*, 92 Idaho 587, 594, 448 P.2d 201, 208 (1968), the Court examined a jury instruction defining gross negligence. The Court approved the jury instruction which read, "Gross negligence means just what it indicates, gross or great negligence; that is negligence in a very high degree." *Id.*

Gross negligence, as found in I.C. § 6–904B, "Tort Claims Against Governmental Entities," was discussed in *Crown v. State, Dept. of Agriculture*, 127 Idaho 188, 898 P.2d 1099 (Ct.App.1994). Gross negligence is defined within that act as "the doing or failing to do an act which a reasonable person in a similar situation and of similar responsibility would, with a minimum of contemplation, be inescapably drawn to recognize his or her duty to do or not do such act *and that failing that duty shows a deliberate indifference to the harmful consequences of others.*" *Id.* at 192, 898 P.2d at 1103. In that case, the Court noted, "to establish gross negligence under the statute, there must be evidence showing not only the breach of an obvious duty of care, but also showing deliberate indifference to the harmful consequences to others." *Id.* at 192–93, 898 P.2d at 1103–04.

An examination of the following facts demonstrates that genuine issues of material fact exist as to whether A & R acted with gross negligence.

David Golden, a licensed engineer, stated that an inspection from the inside of the Beach building would have revealed pockets in the common wall for floor joists connected to the common wall by steel straps. Golden admitted that the steel straps may not have been visible until some ceiling tiles were removed or until a strip of the ceiling adjacent to the wall was removed, however he asserted that if people had time to go into the building to remove personal belongings, there would've been time to perform an inspection of the wall area. Golden conceded

---

1. I.C. § 49–1401 has since been amended and no longer contains the phrase "gross negligence."

that he did not know the condition of the floor in the building to be inspected and that a ladder may have been needed to actually cut through the metal straps had they been found. Golden stated, "It would be reckless and deliberately indifferent to the possible consequences of the structural integrity of a building to demolish an adjacent building with a wrecking ball without first disconnecting the steel straps."

Jerry Kilfoyle was at the fire scene and videotaped the scene throughout the day. Kilfoyle stated in an affidavit that at approximately 2:00 p.m. on March 1, 1994, he and three other people were allowed to enter the Beach building to retrieve high value items of personal property. It appeared to Kilfoyle that the fire had been extinguished and that there was no smoke rising from the building. Kilfoyle stated that he was surprised when the wrecking ball demolished the Beach building, as the fire did not appear to have caused structural damage to the Beach building and the building did not appear to be in imminent danger of collapsing. Kilfoyle was disappointed to see the building demolished, as he knew there was valuable, uninsured property in the undamaged part of the building that could have easily been retrieved.

When asked if he recalled if people were permitted to enter the Beach and Beehive buildings, Fire Chief Tomberg responded that he remembered one person being allowed to enter and that person had "dashed in and out." The people who did go in were "distraught" and were allowed only to enter the building for "seconds." Dave Oglesbee, the Fire Marshall, also testified that he thought only one person, a person who leased the building, had been allowed to enter. Oglesbee also testified that when he entered the Beach building it looked relatively intact. However, he had great concern over the structural stability of the buildings, as there was a lot of heat and smoke in the building. Once he entered the building, he was concerned that the fire might still be in the floor. Oglesbee concluded that it was a dangerous situation within the Beach building.

Bill Smith, who operated the crane and performed the demolition, had been an A & R employee for twenty-seven years and had operated cranes for twenty-five years. Smith also had extensive knowledge concerning masonry structures. Smith testified in his deposition that five to six hours passed from the time he arrived at the site until he was asked to perform the demolition work. During that time period, even though Smith did not perform a visual inspection on the general site to be demolished, he was not concerned whatsoever about damaging the adjoining Adams building. Smith stated that he was aware that masonry buildings could share walls but did not consult anyone or have any knowledge of how the buildings to be demolished were constructed. Dirk Connerly, A & R's vice president who oversaw the demolition, had considerable experience in taking down structures similar to the buildings demolished on that day.

Charles Borcich, the Building Inspector, was present on the day of the fire. Borcich claims that he was not aware of anyone inspecting the buildings on the day of the fire and that to his knowledge, no one made an attempt to ascertain if there was a structural relationship between the Adams and the Beach Building.

Sean Phillips, the owner of the Adams building, recalled speaking with Borcich about his concern for his building in regards to the demolition activities. Although present at the scene, no one attempted to contact Phillips to discuss the design of his building. Phillips stated, "I tried to express my concern . . . but no one would specifically sit down and talk with me or address the situation. . . ." Phillips possessed architectural drawings of the Adams building, as it was being renovated at the time of the fire.

Plaintiff–Appellant Griffin asserts that the definition of gross negligence found in I.C. § 6–904, the Idaho Tort Claims Act, should be applied to I.C. § 46–1017, since both deal with governmental immunity. However, it is unnecessary to determine which of the above-mentioned definitions is most applicable. Under any of the definitions discussed above, genuine issues of material fact exist as to whether A & R acted with gross negligence. Construing the facts most liberally in favor of the plaintiff, a trier of fact could conclude that A & R's failure to inspect the

buildings prior to demolition was grossly negligent given that at least five to six hours passed from the time that A & R arrived on the scene until the first building was demolished. The condition of the buildings after the fire, whether people were entering the building to gather personal belongings, and whether A & R should've known of the possibility that the walls were connected with metal straps are all genuine issues of material fact. Consequently, summary judgment was inappropriate on the issue of gross negligence and the decision of the district court dismissing defendant A & R from the case is reversed.

## IV.

### CONCLUSION

In this case, the plaintiff's building was structurally damaged and subsequently condemned after a fire damaged adjacent buildings. The City of Lewiston and A & R maintain that they are subject to immunity pursuant to the State Disaster Preparedness Act and therefore, are not liable for the damage caused to the plaintiff's building. The City did properly declare a state of emergency and consequently, the City and A & R are both subject to the immunity provisions unless it is determined that the parties acted outside the scope of protection afforded by the immunity clause.

Genuine issues of material fact exist as to whether A & R acted with gross negligence in regards to the events that occurred on March 1, 1994. Consequently, summary judgment dismissal of the plaintiff's case as to defendant A & R should not have been granted and the case is remanded to the district court for further proceedings on this issue. Costs are awarded to appellant. No attorney fees are awarded.

Chief Justice TROUT, Justices SILAK, SCHROEDER and WALTERS concur.

