This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                           **No. A-1-CA-34297**

**RAFAEL ROMERO, JR.,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Tonya Noonan Herring, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Sergio Viscoli, Appellate Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**GARCIA, Judge.**

{1}     Defendant, Rafael Romero Jr., appeals his convictions for two counts of distribution of marijuana, pursuant to NMSA 1978, Section 30-31-22(A)(1)(a) (2011). On appeal, Defendant argues that his right to confront one of the State's witnesses was violated when the State's expert witness, the laboratory analyst who reviewed the raw data generated in the lab, testified that there were no discrepancies between his conclusion and that of a prior analyst, which he offered only after testifying to forming his own independent conclusion that the substance tested was marijuana. We assume without deciding that the limited testimony of the expert witness referencing the conclusions of the prior analyst violate the Confrontation Clause and do so because, we hold that even assuming that such an error implicates the Confrontation Clause, the error was harmless beyond a reasonable doubt. *See State v. Tollardo*, 2012-NMSC-008, ¶ 36, 275 P.3d 110 (stating that a constitutional error is harmless only "when there is no reasonable possibility it affected the verdict" (emphasis, internal quotation marks, and citation omitted)). Defendant also argues that his convictions violate the Equal Protection Clause. We determine that this argument is underdeveloped and without merit. We therefore affirm Defendant's convictions.

**BACKGROUND**

{2}     Defendant was charged by criminal information on April 26, 2013, with two

counts of distribution of marijuana, or synthetic cannabinoids, contrary to Section 30-31-22(A)(1)(a), for sales occurring on or about October 4, 2012 and October 9, 2012. On October 4, 2012, Agent Desmond Perry was an undercover agent assigned to the narcotics unit of the Otero County Sheriff's Office when he was contacted by Agent Rodney Scharmack. Agent Scharmack put Agent Perry in contact with a confidential informant (CI). The CI arranged for Agent Perry to buy marijuana from Defendant at a residence in Alamogordo, New Mexico. Defendant sold Agent Perry and the CI "a green leaf-like substance" that was kept in his refrigerator. Agent Perry paid Defendant seventy dollars for approximately three grams of marijuana. After the buy, Agent Perry performed a presumptive field test on the substance and it tested positive for marijuana. On October 9, 2012, Defendant contacted the CI. The CI and Agent Perry again went to the same residence and completed a second transaction with Defendant for roughly six grams of marijuana. Agent Scharmack received the suspected marijuana after it was purchased by Agent Perry and conducted a field test on the substance, testing positive for marijuana.

{3}     During the pretrial proceedings, the State filed a notice regarding the testimony of expert witness. The State's notice sought to advise the district court and Defendant of its intent to "present the testimony of any expert witness who either analyzed the evidence or the raw data its testing generated." On the first day of trial, outside the

presence of the jury, Defendant objected to the State's motion, and the district court noted Defendant's objection and overruled it.

{4} At trial, the State called Richard Barber, a forensic analyst employed with the New Mexico Department of Public Safety Forensic Laboratory in Las Cruces, New Mexico, as one of its witnesses. Mr. Barber was qualified as an expert in chemistry and the analysis of controlled substances. Mr. Barber was called to testify from the raw data generated because the first analyst, who originally tested the substance, was not with the laboratory any longer. Mr. Barber testified that the instrument used to collect data in this case was a gas chromatograph mass spectrometer. The gas chromatograph is an oven that increases the temperature at a standard and reproducible rate, helping to separate the substance. The mass spectrometer blows apart the pieces with ions to identify the substance. Mr. Barber testified that he worked with such analytical tools for a number of years, and based upon his experience, as well as comparisons to standards sold by drug companies, he can determine if the data produced by the instrument is consistent with a certain drug. Mr. Barber testified to using his independent judgement when reviewing the raw data in this case. Mr. Barber concluded that "the print-outs of the data that [he] reviewed" were consistent with tetrahydrocannabinal (THC), the active component in marijuana, for both samples.

{5} Mr. Barber testified to having reviewed the first forensic analyst's report. Mr. Barber attested to reviewing the case file and the prior analyst's original forensic report only after forming his own conclusions. Mr. Barber explained, "I have to ensure that they're consistent." The State questioned Mr. Barber about any discrepancies between his work and that of the prior analyst:

State:    Did you review the original forensic [analyst]'s report in this case?

Mr. Barber: I reviewed that.

State:    And . . . did your review of that same raw data lead you to a different, or different, decision . . . [of] the underlying conclusions?

Mr. Barber: Part of our policy would be to report any discrepancies that we find, and I found no discrepancies in reviewing this case.

State:    And did you use your independent judgment when you reviewed the raw data in this case?

Mr. Barber: Yes.

Defendant did not object to this line of questioning by the State, and on cross-examination, defense counsel refreshed Mr. Barber's recollection of the first analyst's report and questioned him about its contents. Neither the first analyst's report nor that of Mr. Barber was admitted into evidence. Defendant was convicted by the jury on two counts of distribution of marijuana.

**DISCUSSION**

{6}     Defendant makes two arguments on appeal. First, Defendant argues that his confrontation rights were violated by Mr. Barber's testimony regarding the conclusion reached by the first analyst. Second, Defendant argues that his convictions for two counts of distribution of marijuana should be reversed on equal protection grounds.

**I.      Confrontation Clause**

{7}     "[T]estimonial out-of-court statements are barred under the Confrontation Clause of the Sixth Amendment [of the United States Constitution], unless the witness is unavailable, and the defendant had a prior opportunity to cross-examine the witness." *State v. Romero*, 2007-NMSC-013, ¶ 21, 141 N.M. 403, 156 P.3d 694. We review Defendant's challenges to the witness's testimony de novo. *See State v. Zamarripa*, 2009-NMSC-001, ¶ 22, 145 N.M. 402, 199 P.3d 846.

{8}     The Confrontation Clause "applies to witnesses against the accused—in other words, those who bear testimony,—where 'testimony' is a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *State v. Aragon*, 2010-NMSC-008, ¶ 6, 147 N.M. 474, 225 P.3d 1280 (internal quotation marks and citation omitted), *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37 n.6. The United States Supreme Court, in *Crawford v. Washington*, identified various formulations of this core class of testimonial

statements:

> ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially, extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]

541 U.S. 36, 51-52 (2004) (omission, internal quotation marks, and citations omitted). The United States Supreme Court applied *Crawford* to forensic laboratory reports in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 308-10 (2009), stating that admission of laboratory reports via "certificates of analysis" violated the confrontation Clause because the certificates fell within the "class of testimonial statements" described in *Crawford*.

{9}      In *Bullcoming v. New Mexico*, 564 U.S. 647, 651-53 (2011), the state sought to admit a State Laboratory Division (SLD) report of blood alcohol analysis, which the United States Supreme Court described as "[a] document created solely for an evidentiary purpose, made in aid of a police investigation, rank[ing] as testimonial." *Id.* at 664 (internal quotation marks and citation omitted). The report contained a "certificate of analyst," which included statements by a lab technician who was unavailable to testify at trial. *Id.* at 651-52. The United States Supreme Court rejected

the state's attempt to present the non-testifying analyst's report through "surrogate testimony" of an analyst who neither participated in nor observed the testing process and had no "independent opinion" concerning defendant's blood alcohol content. *Id.* at 652, 662. The United States Supreme Court explained that the defendant had a right to confront the non-testifying analyst as soon as "the [s]tate elected to introduce [non-testifying analyst's] certification[.]" *Id.* at 663.

{10}     The United States Supreme Court further addressed the intersection of scientific laboratory reports and the Confrontation Clause in *Williams v. Illinois*, 567 U.S. 50 (2012). In *Williams*, an expert witness in forensic and biology DNA analysis testified that the DNA generated by a separate, independent lab matched the DNA profile of the defendant. *Id*. at 61-62. The independent lab report was not introduced nor did the expert quote or read from the report. *Id.* In a split decision with no controlling rationale, the plurality concluded that the defendant's Confrontation Clause right was not violated because the independent test was not offered to prove the truth of the matter asserted, but merely to provide a basis for the conclusions that the expert reached. *Id.* at 57-58. The plurality further concluded that the analyst did not "testify to anything that was done [in the other] lab, and she did not vouch for the quality of the [other lab's] work. *Id.* at 71. The plurality concluded that "[a]n expert witness may voice an opinion based on facts concerning the events at issue even if the expert lacks

first-hand knowledge of those facts." *Id.* at 69.

{11} Our Supreme Court analyzed the use of scientific laboratory reports and implications to the Confrontation Clause in several recent cases. In *Aragon*, in reliance on *Melendez-Diaz*, our Supreme Court held that the defendant's right to confrontation was violated when a chemical forensic report was admitted into evidence through the testimony of an analyst who had not prepared the report. *Aragon*, 2010-NMSC-008, ¶¶ 1-2. In its analysis, our Supreme Court was unclear whether the witness's expert testimony was merely "parroting" the opinion of the analyst who did not testify or if he had formed his own opinions regarding whether the substance was a narcotic. *Id.* ¶¶ 26, 29. Because the analyst who prepared the report did not testify, her opinion could not be effectively challenged, and therefore, the defendant's right to confrontation was violated. *Id.* ¶ 30.

{12} Similarly in *State v. Navarette*, our Supreme Court held that a forensic pathologist is precluded by the Confrontation Clause from relating subjective observations recorded in an autopsy report as a basis for his own trial opinions, "when the pathologist neither participated in nor observed the autopsy performed[,]" even if the report itself is not entered into evidence. 2013-NMSC-003, ¶¶ 1, 5, 294 P.3d 435. Our Supreme Court reasoned that because the autopsy report contained statements that were (1) "made with the primary intention of establishing facts that the declarant

understood might be used in a criminal prosecution," (2) the statements in the autopsy were the basis for the pathologist's opinion and were offered to prove the truth of the matter asserted, and (3) the prior pathologist who recorded her subjective observations was not available to testify and the defendant did not have a prior-opportunity to cross-examine her, the defendant's right to confrontation was violated. *Id.* ¶ 1. However, our Supreme Court did note that although the autopsy report that was introduced in *Navarette* implicated the Confrontation Clause, "an expert witness may express an independent opinion regarding his or her interpretation of raw data without offending the Confrontation Clause." *Id.* ¶ 22.

{13} Applying this logic from *Navarette*, this Court explained in *State v. Huettl* that "an expert who has analyzed the raw data generated by another analyst and who has formed independent conclusions based upon that analysis may testify as to those conclusions." 2013-NMCA-038, ¶ 36, 305 P.3d 956. In *Huettl*, the defendant argued that the state violated his right to confrontation by failing to present the testimony of the forensic analyst who placed the seized sample of methamphetamine in the spectrophotometer machine for testing. *Id.* ¶ 1. At trial, the state presented testimony of the forensic analyst and lab supervisor who interpreted the raw results and formed an expert opinion that the substance tested was methamphetamine. *Id.* ¶ 3. This Court held that because the first analyst's participation in the testing process was limited to

having only placed the substance onto the spectrometer and because the expert witness testified only to his own analysis and interpretation of the raw data generated, the defendant's right to confrontation was not violated. *Id.* ¶ 6.

{14} First, we do not perceive, nor does Defendant argue that Mr. Barber's testimony with regards to his own conclusions violated the Confrontation Clause. In this respect, Defendant's testing process closely tracks the factual circumstances presented in *Huettl*. *See id.* Unlike *Aragon*, it is clear from his testimony that Mr. Barber was not merely "parroting" the conclusion of the first analyst and instead, used his own independent judgement when reviewing the raw data in this case. Instead, Mr. Barber interpreted the raw data produced by the gas chromatography mass spectrometer, formed his own independent conclusion, and only later reviewed the file and conclusions made by the previous analyst. *See Huettl*, 2013-NMCA-038, ¶ 6 (concluding that because the expert witness testified only to his own analysis and interpretation of the raw data generated, the defendant's right to confrontation was not violated). We therefore conclude that Mr. Barber's testimony regarding his own review of the raw data did not implicate or violate the Confrontation Clause. *See Navarette*, 2013-NMSC-003, ¶ 22 (concluding that an expert witness expressing an independent opinion regarding his interpretation of raw data would not violate the Confrontation Clause).

{15} The more specific issue before us is whether Mr. Barber's limited testimony regarding any discrepancies between his conclusions and that of the prior analyst violated Defendant's right to confront the prior analyst. Defendant argues that the conclusions reached by the first analyst were admitted into evidence in error by Mr. Barber when he testified to having reviewed the conclusions of the first analysts and confirmed there were "no discrepancies." Defendant contends, therefore, that the facts of this case more closely resembles the facts in *Aragon* and *Navarette* where prior conclusions or reports were admitted into evidence through the testimony of analysts who had not formed their own independent conclusions.

{16} In the present case, we agree that the conclusions of the first analyst were indirectly brought before the jury through the "no discrepancies" testimony by Mr. Barber. *See Aragon*, 2010-NMSC-008, ¶ 2 (concluding that the defendant's right to confrontation was violated when a chemical forensic report was admitted into evidence through the testimony of an analyst who had not prepared that report). However, we will not engage in the more complex analysis of the issue—whether Mr. Barber's testimony regarding any discrepancies with the first analyst's conclusions implicates the Confrontation Clause—since the outcome would not change under a harmless error analysis. As a result, we assume without deciding that Mr. Barber's limited "no discrepancies" testimony may have implicated and violated the

12

Confrontation Clause.

**Harmless Error**

{17} "Confrontation Clause violations are subject to harmless error review." *State v. Ortega*, 2014-NMSC-017, ¶ 17, 327 P.3d 1076. "Harmless errors are constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may be deemed harmless, not requiring the automatic reversal of the conviction." *Id.* ¶ 20 (omission, internal quotation marks, and citation omitted). A constitutional error is harmless only "when there is no reasonable possibility it affected the verdict." *Tollardo*, 2012-NMSC-008, ¶ 36 (emphasis, internal quotation marks, and citation omitted). In determining whether this standard is met, we consider three factors, none of which is determinative: "whether there is: (1) substantial evidence to support the conviction without reference to the improperly admitted evidence; (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear minuscule; and (3) no substantial conflicting evidence to discredit the [s]tate's testimony." *State v. Barr*, 2009-NMSC-024, ¶ 56, 146 N.M. 301, 210 P.3d 198 (footnote omitted), *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37. Lastly, we note that "when assessing the harmfulness of error, it is not the role of the appellate court to reweigh the evidence against a defendant[.] . . . Rather, the focus is on whether the verdict was impacted by the error." *Barr*, 2009-

NMSC-024, ¶ 57.

**{18}** Under the facts of the case before us, there is no reasonable possibility that "no discrepancies" testimony by Mr. Barber's affected the verdict. The record established that the Agent Perry paid Defendant on two occasions for marijuana. Defendant sold Agent Perry and the CI "a green leaf like substance," stored in aluminum foil in his refrigerator, which Agent Perry testified that from his training and experience, marijuana is often kept in the refrigerator to keep the odor down and keep it fresh. After each buy, agents performed presumptive field tests on the substances and both tested positive for marijuana. The purchased marijuana, wrapped in foil and in a bagie, were admitted into evidence without objection, and the photographs of the same evidence were also admitted. There is no contradictory evidence in the record attesting that the evidence sold to agents was not marijuana. Even assuming the "no discrepancies" testimony was impermissible, it was cumulative in nature, not conflicting with any other evidence, and only a minuscule piece of the disproportionate volume of evidence offered to prove that the substance purchased from Defendant was marijuana. We therefore conclude that the error was harmless beyond a reasonable doubt. *See Zamarripa*, 2009-NMSC-001, ¶ 52 ("To preclude reversal, the error must be harmless beyond a reasonable doubt.").

**II.  Equal Protection**

**{19}** Defendant argues that his convictions violate double jeopardy because he was convicted for distribution of marijuana whereas a licensed medical marijuana distributor would not face conviction. Defendant concedes that this issue was not preserved, and we therefore review for fundamental error. *See* Rule 12-321(B)(2) NMRA (providing appellate court discretion as an exception to the preservation rule to review questions involving fundamental error or fundamental rights). "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633.

**{20}** "Equal protection, both federal and state, guarantees that the government will treat individuals similarly situated in an equal manner." *Breen v. Carlsbad Mun. Sch.*, 2005-NMSC-028, ¶ 7, 138 N.M. 331, 120 P.3d 413. The threshold question to any challenge under equal protection is whether the defendant is a member "in a group that is similarly situated to another group but treated differently by the government because of a legislative classification." *State v. Murillo*, 2015-NMCA-046, ¶ 17, 347 P.3d 284. Defendant did not develop this threshold question. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed."). Defendant presented no evidence and made no arguments as to how his position is similar to that of a person licensed by the state to

distribute medical marijuana. "[The d]efendant also cites no authority from any jurisdiction[,] . . . so we may conclude that no such authority exists." *State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031. For the foregoing reasons, it is not necessary to consider Defendant's undeveloped equal protection argument any further. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("[The appellate courts] will not review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)).

**CONCLUSION**

{21}    For the foregoing reasons, we affirm.

{22}    **IT IS SO ORDERED.**


_____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**


_____

**LINDA M. VANZI, Chief Judge**


_____

**J. MILES HANISEE, Judge**

16